Hattie KEENON, Individually and on behalf of all persons similarly situated, Plaintiff-Appellant,

v.

James B. CONLISK, Jr. and James M. Rochford, Defendants-Appellees.

No. 74–1463.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1974.

Decided Dec. 30, 1974.

Jack B. Schmetterer, Chicago, Ill., for plaintiff-appellant.

Richard L. Curry, Corp. Counsel, Edmund Hatfield, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, MARIS, Senior Circuit Judge,* and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

This action was brought under the Civil Rights Act (42 U.S.C. § 1983) for injunctive relief and damages. The complaint alleged that at 8:00 p. m. on August 12, 1973, plaintiff and her husband were arrested in the Second Police District of the First Area of the Chicago Police Department.[1] They were transferred to Second District headquarters at 5101 South Wentworth Avenue. From 8:00 p. m. until midnight, plaintiff was

---

* Senior Circuit Judge Albert Branson Maris of the Third Circuit is sitting by designation.

1. The Police Department divides Chicago into areas and districts. Several of the 21 districts comprise each of the 6 areas.

incarcerated in a cell with her hands handcuffed behind her back. On the other hand, during this time her husband was searched, fingerprinted, charged with three firearms offenses, permitted to make bond and released. At approximately midnight, plaintiff, still handcuffed, was transported in a prisoners' transportation vehicle to Central Police Headquarters at 1121 South State Street where processing of the single charge against her (possessing a firearm without a registration certificate) was begun. She was released about 4:00 a. m. on August 13, 1973.

Plaintiff sued not only on her own behalf, but also on behalf of all women arrested outside of the Central Police District and charged by Chicago police officers with certain criminal offenses within five years of the filing of this lawsuit. According to the complaint, male prisoners are processed after their arrests within the area and district wherein they are arrested, whereas women are processed only at Central Headquarters at 1121 South State Street, the only place where policewomen are assigned to process female arrestees.

Because of the different treatment accorded to members of the female sex, plaintiff claims that she suffered compensable injury by reason of the lengthy handcuffing and unnecessarily prolonged incarceration. She further alleges that "her attorneys [had] to travel longer distances and to spend more time to effect her release" than in the case of her husband. Similar allegations are made on behalf of the plaintiff class.

The defendants are the former Superintendent of the Chicago Police Department and his successor. They were charged with responsibility for the department's policy of maintaining policewomen to process female prisoners only at Central District Headquarters, thus causing inferior treatment of fe-

male arrestees and, therefore, depriving plaintiff and members of her class of due process and the equal protection of the laws. In addition to $15,000 damages sought for plaintiff and each member of the plaintiff class, she sought an injunction requiring the employment of enough policewomen to process female prisoners within the Police Department areas and districts where they are arrested and ordering the processing of female prisoners to take place within those areas and districts.

Defendants filed a motion to dismiss and the district court granted the motion on the ground that the complaint failed to state a claim upon which relief can be granted. See Fed.R.Civ.Pro. 12(b)(6). Other grounds raised by defendants were not considered by the district court in its memorandum opinion and order.

Defendants did not present any supporting affidavits or other evidentiary material but argued that their policy represented a valid administrative distinction "made necessary by the lack of adequate physical facilities and unavailability of police matrons at the local district level." Despite plaintiff's contention that the different treatment of prisoners based on sex involved a "suspect classification" requiring strict judicial scrutiny, the district judge held that the "rational basis" test was applicable and proceeded to apply it.[2] The court addressed the issue "whether a rational basis for the Police Department's regulation on the processing of the female arrestees exists," and concluded:

"The Department's concern that the processing of women, which includes physical custody and search, be handled in an appropriate manner, makes it reasonable that they are brought to the only place where matrons are on duty around the clock. Since many more men are arrested than women, it is not unreasonable that the facilities for handling women prisoners are not as generally dispersed as those for

2. Because we hold *infra* that even under the "rational basis" test the district court could not properly dismiss the complaint as it did,

we need not decide if the "rational basis" test is the proper standard by which to judge the propriety of a classification based upon sex.

men. This system is not arbitrary in its treatment of women, but rather represents a reasonable attempt to act in their best interests and to handle the processing of all arrestees efficiently."

In our view, the district judge could not properly have determined that the practices complained of were reasonable from the record before him. Plaintiff's allegations, which must be taken as true at this juncture in the proceedings, are sufficient to require a showing by the defendants of some justification for the allegedly discriminatory treatment of female arrestees. Bald assertions that the police practices are reasonable cannot be considered. The district court held that because fewer females are arrested, it is reasonable to provide matrons and processing facilities only at central headquarters. The district court could not have so held without accepting defendants' assertions as fact. In light of the allegedly inferior treatment of women arrestees, the lack of any factual record to support defendants' contentions and the acceptance of the well-pleaded facts in the complaint required at this stage of the proceedings,[3] we conclude that the district court erred in holding that it was reasonable for defendants to refuse to provide processing for women arrestees at more than one location in the city, to keep such arrestees handcuffed for several hours while transportation to central headquarters is arranged, and to delay their opportunity to secure release on bond. The defendants may be able to justify their seemingly discriminatory treatment of women arrestees, but it was improper to dismiss the complaint without considering any evidence to support this classification based upon sex.[4]

The judgment of dismissal is reversed and the cause is remanded for further proceedings pursuant to Circuit Rule 23.

3. See e. g., Hillebrand v. Sav-Co., 353 F.Supp. 19 (E.D.Ill.1972); Pointer v. American Oil Co., 295 F.Supp. 573 (N.D.Ind.1969). See also 2A Moore's Federal Practice (2d ed.) ¶ 12.08 at 2267 (1974).

4. See generally, 2A Moore's Federal Practice (2d ed.) ¶ 12.08 at 2265–2286 and ¶ 12.09 at 2296 (1974).