[Civ. No. 17506. Fourth Dist., Div. Two. Sept. 30, 1977.]

JOHN STODD, Plaintiff and Appellant, v.
HARRY GOLDBERGER et al., Defendants and Respondents.

828

COUNSEL

Buchalter, Nemer, Fields & Savitch, Buchalter, Nemer, Fields & Chrystie and John A. Dito for Plaintiff and Appellant.

Sulmeyer, Kupetz, Bauman & Rothman and Roy S. Giordano for Defendants and Respondents.

OPINION

KAUFMAN, J.—The trial court granted defendants' motions for judgment on the pleadings, and plaintiff appeals.

The facts are derived from the allegations of plaintiff's first amended complaint which are taken as true for purposes of this appeal.

Plaintiff is the trustee in bankruptcy of M.I.I. Corporation (M.I.I.), a California corporation.

On August 31, 1967, M.I.I. entered into a written joint venture agreement with Goldco, a limited partnership, for the ownership and operation of the Mission Inn Hotel in Riverside. The general partners of Goldco are Harry Goldberger, L. Kenneth Heuler, and G. Barton Heuler.

The joint venture agreement allocated to Goldco all income and profits and losses from the joint venture along with all depreciation deductions and all investment credits. Allegedly, the sole benefit to accrue to M.I.I. was that, upon a sale of the hotel at a profit, after repaying Goldco its $300,000 cash capital contribution, the gain on the sale would be divided equally.

On March 27, 1969, M.I.I. filed a petition for an arrangement under section 322 of chapter XI of the Bankruptcy Act. The bankruptcy claims register incorporated by reference into the first amended complaint discloses approximately 279 corporate creditors whose claims exceed $2,542,000. None of these claims have been paid, and the corporation has no assets.

The first amended complaint names as defendants, among others, Goldco and its three individual general partners. It contains two counts. In the first count, plaintiff seeks to disregard M.I.I.'s corporate existence and, on the theory of alter ego, establish defendants' personal liability for all of M.I.I.'s debts and recover from defendants ". . . damages in the approximate sum of $2,542,000.00, in accordance with said claims filed in said bankruptcy proceeding. . . ." To support the alter ego doctrine it is alleged that there is a unity of ownership between defendants and M.I.I., that defendants dominated and controlled M.I.I., that M.I.I. was created and operated by defendants pursuant to a fraudulent scheme to defraud M.I.I.'s creditors and that adherence to the fiction of M.I.I.'s separate existence would sanction a fraud and promote injustice.

In the second count it is alleged on information and belief that ". . . trade creditors and other creditors of the joint venture between . . . M.I.I. . . . and GOLDCO . . . were and are included . . ." among the creditors of M.I.I. as listed in the bankruptcy claims register, and plaintiff seeks "contribution" from Goldco and its general partners for one-half of the joint venture debts in the approximate amount of $1,300,000.

For purposes of identification we shall refer to the first count as the alter ego cause of action and the second count as the cause of action for contribution.

In granting defendants' motions for judgment on the pleading as to the alter ego cause of action, the trial court granted plaintiff 15 days' leave to amend, noting: "A liberal construction of the allegations contained in [the first amended complaint] suggests the possibility of amendment which would permit proof by the plaintiff that corporate assets were converted, transferred and dealt with to the injury of the corporation and its creditors." Plaintiff declined to avail himself of the opportunity to amend.

### The Alter Ego Cause of Action

■ Plaintiff contends that allegations that corporate assets were converted or transferred to the injury of the corporation are not necessary to invoke the alter ego doctrine. In this plaintiff is correct. "It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances in each case. (See *H. A. S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518, 523 [133 P.2d 391,

145 A.L.R. 349]; *Stark* v. *Coker,* 20 Cal.2d 839, 846 [129 P.2d 390].) It has been stated that the two requirements for application of this doctrine are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow. [Citations.]" *(Automotriz etc. De California* v. *Resnick,* 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]; accord: *Stark* v. *Coker,* 20 Cal.2d 839, 846 [129 P.2d 390]; *Watson* v. *Commonwealth Ins. Co.,* 8 Cal.2d 61, 68 [63 P.2d 295]; see 6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 6, p. 4318; 1A Ballentine & Sterling, Cal. Corporation Laws (4th ed. 1977) Litigation, § 299.01[1], pp. 14-40.)

■ But plaintiff misreads the message of the trial court. Its ruling was not that allegation of conversion or misappropriation of corporate property is generally a prerequisite to the application of the doctrine of alter ego, but that plaintiff, as trustee in bankruptcy of a bankrupt corporation, cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants. In the absence of any such allegation, the asserted cause of action belongs to each creditor individually, and plaintiff is not the real party in interest as required by Code of Civil Procedure section 367.

Plaintiff stoutly maintains that a trustee in bankruptcy of a bankrupt corporation may maintain an action against corporate shareholders on an alter ego theory without allegations giving rise to a cause of action in the bankrupt corporation. He relies on and cites *Mayo* v. *Pioneer Bank & Trust Company,* 274 F.2d 320, *Fitzgerald* v. *Central Bank & Trust Company,* 257 F.2d 118, *Hillebrand* v. *Sav-Co,* 353 F.Supp. 19, *Long* v. *McGlon,* 263 F.Supp. 96, *Henderson* v. *Rounds & Porter Lumber Co.,* 99 F.Supp. 376, and *Buckman* v. *Elm Hill Realty Co. of Peabody* (1942) 312 Mass. 10 [42 N.E.2d 814]. Not one of the cited cases supports plaintiff's position.

*Buckman* v. *Elm Hill Realty Co. of Peabody, supra,* 42 N.E.2d 814, did not involve application of the doctrine of alter ego and no corporate entity was there disregarded. The court did discuss the control of one Gordon over the bankrupt corporation and the defendant corporation in relation to his fiduciary duty to the bankrupt corporation and the knowledge of the defendant corporation. In any event, the case involved

self-dealing by a fiduciary and the trustee was pursuing a cause of action belonging to the bankrupt corporation.

Neither *Mayo* v. *Pioneer Bank & Trust Company, supra,* 274 F.2d 320, nor *Fitzgerald* v. *Central Bank & Trust Company, supra,* 257 F.2d 118, are in point. *Mayo* involved an action by a trustee in bankruptcy to set aside an allegedly fraudulent transfer of the bankrupt's property. The court disregarded corporate existence in *rejecting* the claim of the trustee and denying his application for rehearing. In *Fitzgerald,* corporate existence was disregarded in allowing a claim in bankruptcy *adversely to the position of the trustee* where the alleged debt was technically not that of the bankrupt but of a controlled and related business entity.

In every single other case cited, the trustee in bankruptcy was pursuing a right of action belonging to the bankrupt or attempting to recover property of the bankrupt. *Hillebrand* v. *Sav-Co, supra,* 353 F.Supp. 19, involved an action by a trustee in bankruptcy to recover assets of the bankrupt by setting aside fraudulent and preferential transfers. *Henderson* v. *Rounds & Porter Lumber Co., supra,* 99 F.Supp. 376, involved an action by creditors and a trustee in bankruptcy for conversion by a corporate stockholder of assets of the bankrupt corporation. *Long* v. *McGlon, supra,* involved an action by the trustee of a bankrupt corporation against the sole shareholders on an alter ego theory upon allegations that, ". . . defendants deposited corporation funds into their personal bank accounts or that corporation funds were received by the defendants personally . . . ." (263 F.Supp. at p. 97.) As the court there quite correctly observed: "The allegations of the complaint, which are yet subject to amendment, and which even now must be liberally construed would permit proof by the plaintiff that *corporate assets were converted to the injury of the corporation and creditors.*" (*Id.*) (Italics added.) Clearly, injury to the corporation was alleged, and the right of action was that of the bankrupt.

Plaintiff maintains he represents the corporate creditors and that by virtue of section 70c of the Bankruptcy Act (11 U.S.C. § 110(c)) he has the rights of a creditor and can therefore maintain this action on behalf of the creditors. Again, he relies on *Long* v. *McGlon, supra,* 263 F.Supp. 96. It is true that this two-page opinion of the Federal District Court for the District of South Carolina contains statements to the effect that a trustee in bankruptcy represents the creditors of the bankrupt (263 F.Supp. at p. 96) and that the maintenance of an action by a trustee in bankruptcy to hold shareholders of the bankrupt corporation personally

liable for its debts is authorized by section 70c of the Bankruptcy Act.[1] (263 F.Supp. at p. 98.)

However, these statements were unnecessary to the decision. The question confronting the court was whether the complaint stated a cause of action. As we have already pointed out and as the court there observed, the complaint contained allegations that defendants had converted or misappropriated property of the bankrupt corporation. The court was correct in holding that a cause of action was stated. It belonged to the bankrupt and was an asset of the estate in bankruptcy.

Moreover, we do not agree with these dicta of the learned district court judge. It is true in a sense that a trustee in bankruptcy represents creditors of the bankrupt. He does so, however, only in a limited way. He represents the creditors only in matters relating to marshaling, preserving or otherwise administering the assets of the estate in bankruptcy. He is not an appropriate general representative of creditors. Indeed, until a final adjudication of the bankrupt's liability, the trustee in bankruptcy has a statutory duty to object to claims which may be improper, and it ill becomes him to assume the role of an advocate of parties asserting those claims. (*Cissell* v. *American Home Assurance Company,* 521 F.2d 790, 793; see 11 U.S.C. § 75(a).) A trustee in bankruptcy may not sue upon claims of creditors even if they are assigned to him if the claims sued upon are not claims belonging to the estate in bankruptcy. (*Cissell* v. *American Home Assurance Company, supra,* 521 F.2d at p. 792; see 2A Collier on Bankruptcy (14th ed.) ¶ 47.05, p. 1746.) The cases are uniform in recognizing that a trustee in bankruptcy may not enforce rights of action which belong to the creditors individually because they are not rights in which the bankrupt claims an interest and are not assets of the estate in bankruptcy. (E.g., *Seegmiller* v. *Day,* 249 F. 177, 180-181; *In re Beachy & Co.,* 170 F. 825, 828; *In re Crystal Spring Bottling Co.,* 96 F. 945, 946; *Fitzgerald* v. *Marshall,* 161 F.Supp. 470; *Morris* v. *Sampsel* (1937) 224 Wis. 560 [272 N.W. 53, 56-57]; see also *In re Associated Oil Co.,* 289 F. 693.)

---

[1]Section 70c of the Bankruptcy Act (11 U.S.C. § 110(c)) provides in pertinent part: "The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists."

■ Plaintiff contends that amendments to section 70c of the Bankruptcy Act, particularly that in 1966 (Pub.L. No. 89-495, § 5, 80 Stat. 269) enlarged the powers of a trustee in bankruptcy and authorized maintenance of an action by the trustee to establish third party liability for the debts of the bankrupt. We believe not. As stated in another context in *Suhl* v. *Bumb,* 348 F.2d 869, 874, " '[t]he fact that the relationship between an individual and the corporation is such that he may be liable for the obligations of the corporation *does not mean that the individual's* assets are those of the corporation, or that he "is" the Corporation and is a bankrupt along with the corporation.' "

Section 70 of the Bankruptcy Act is entitled "Title to Property" and deals with the rights and powers of a trustee in bankruptcy in relation to property of the estate in bankruptcy. "Section 70 is the 'title' section of the act and provides many of the legal tools for assembling the bankrupt's estate. It defines the rights and remedies of the trustee in this process. . . ." (H.R. Rep. No. 686, 89th Cong., 1st Sess. (1965) [relating to the 1966 amend.]; see 4A Collier on Bankruptcy (14th ed.) ¶ 70.47, p. 578.) Undoubtedly, the amendments to section 70 were meant to enlarge the rights and powers of the trustee in relation to marshaling the assets of the bankrupt estate, but there is nothing in the ample legislative history of the amendments to suggest that they were intended to authorize a trustee in bankruptcy to maintain an action on behalf of creditors against a third party liable for a debt of the bankrupt on a right of action in which the bankrupt has no interest. (See Legislative History of the "Strong-Arm Clause", 4A Collier on Bankruptcy (14th ed.) ¶ 70.47, pp. 564-583, particularly at pp. 577-582; see also 4A Collier on Bankruptcy (14th ed.) ¶ 70.03[4], pp. 39-44, particularly at p. 41, text accompanying fn. 35d.)

With respect to the alter ego cause of action, the judgment will be affirmed.

### *The Contribution Cause of Action*

■ The rights and liabilities of joint venturers, *inter se,* are governed by the principles applicable to partnerships. (*Zeibak* v. *Nasser,* 12 Cal.2d 1, 12 [82 P.2d 375]; *Watterson* v. *Knapp,* 35 Cal.App.2d 283, 287 [95 P.2d 154].)

Plaintiff seeks to enforce the asserted obligation of M.I.I. and its general partners as joint venturers to contribute to the payment of joint

venture liabilities. Plaintiff relies on Corporations Code section 15040, subdivision (d) which provides in pertinent part: "The partners shall contribute . . . the amount necessary to satisfy the liabilities; but if any, but not all, of the partners are insolvent, . . . the other partners shall contribute their share of the liabilities, and, in the relative proportions in which they share the profits, the additional amount necessary to pay the liabilities."

Notwithstanding the prefatory clause of Corporations Code section 15040 that the rules set forth in the section are rules to be observed in "settling accounts between the partners after dissolution," plaintiff apparently does not, as otherwise might be expected, claim the right to contribution as a representative of M.I.I., the bankrupt joint venturer. Such a claim could not prevail.

Subdivision (f) of Corporations Code section 15040 provides: "Any partner or his legal representative shall have the right to enforce the contributions specified in [subdivision] (d) . . . to the extent of the amount *which he has paid* in excess of his share of the liability." (Italics added.) Plaintiff, of course, has not alleged payment by M.I.I. or himself of any of the alleged liabilities. On the contrary, it is alleged they are unpaid.

Furthermore, generally, partners or joint venturers may not bring suit against one another on causes of action arising from the partnership or joint venture business until there has been a dissolution of the partnership or joint venture, a settlement of its affairs and an accounting. (*Dukes* v. *Kellogg,* 127 Cal. 563, 564 [60 P. 44]; *Lewis* v. *Firestone,* 170 Cal.App.2d 129, 139 [338 P.2d 953]; *Martyn* v. *Leslie,* 137 Cal.App.2d 41, 61-62 [290 P.2d 58]; *Cunningham* v. *deMordaigle,* 82 Cal.App.2d 620, 621-622 [186 P.2d 423].) Here, of course, the first amended complaint indicates that there has been no settlement of the joint venture's affairs and no accounting.[2]

---

[2]Defendants also assert that the first amended complaint does not show a dissolution of the joint venture. Corporations Code section 15031, subdivision (5) provides that a partnership is dissolved by "the bankruptcy of any partner. . . ." The first amended complaint alleges, of course, the filing of a petition for a bankruptcy arrangement under chapter XI of the Bankruptcy Act. It does not, however, allege that M.I.I. has been adjudicated a bankrupt, and defendants contend that Corporations Code section 15031, subdivision (5) contemplates an adjudication of bankruptcy. Neither party favors us with a citation of any authority on this point. In view of the disposition, however, this issue need not be decided.

■ Plaintiff points to an exception to the general rule. " '. . . [W]here no complex account involving a variety of partnership transactions is involved, an accounting is not a prerequisite to suit.' . . . " (*Pilch* v. *Milikin,* 200 Cal.App.2d 212, 222 [19 Cal.Rptr. 334].) Here, however, the first amended complaint alleges that the creditors of M.I.I., and inferentially of the joint venture, number some 279 whose claims, ranging from under $100 to over $50,000, total in excess of $2,542,000. So far as is alleged, the validity of these claims has not been established. Moreover, although the first amended complaint alleges that M.I.I. is without assets, it is not alleged whether or not the joint venture has assets that might be applied to payment of debts. Under these circumstances, an accounting is appropriate. Plaintiff does not come within the exception to the general rule.

Again, plaintiff claims to have the right to maintain an action for contribution as representative of M.I.I.'s creditors. This contention is largely disposed of by our previous discussion of plaintiff's status as a representative of his bankrupt's creditors. He represents the creditors only in matters relating to marshaling, preserving or otherwise administering the assets of the estate in bankruptcy.[3]

Apparently in recognition of this fact, plaintiff points out that subdivision (a) of Corporations Code section 15040 specifically provides that the contributions of the partners necessary for the payment of all the liabilities constitutes an asset of the *partnership*. That is true. But plaintiff is not the trustee in bankruptcy of the joint venture; he is the trustee in bankruptcy of only one of the joint venturers. Section 5(i) of the Bankruptcy Act (11 U.S.C. § 23(i)) provides in pertinent part: "In the event of one or more but not all of the general partners of a partnership being adjudged bankrupt, *the partnership property shall not be administered in bankruptcy,* unless by consent of the general partner or partners not adjudged bankrupt. . . ." (Italics added.)

■ Finally, plaintiff contends a trustee in bankruptcy is specifically authorized to enforce contribution by subdivision (e) of Corporations

---

[3]In respect to this cause of action, plaintiff has another problem. The creditors for whose claims contribution might be proper are the joint venture creditors. Plaintiff claims to represent M.I.I.'s creditors. But it is not alleged that the creditors of M.I.I. and the joint venture are the same. On the contrary, it is alleged that joint venture creditors are *included* in the list of creditors of M.I.I. incorporated by reference into the first amended complaint.

Code section 15040: "An assignee for the benefit of creditors or any person appointed by the court shall have the right to enforce the contributions specified in [subdivision] (d) . . . ."

First, plaintiff urges that there is a great similarity between a trustee in bankruptcy and an assignee for benefit of creditors and that therefore the designation "assignee for the benefit of creditors" should be construed to include a trustee in bankruptcy. Suffice it to say that a trustee in bankruptcy is not an assignee for the benefit of the creditors. We are confident the Legislature is aware of the distinction, and, had it meant to designate a trustee in bankruptcy, it would have done so expressly.

Next, plaintiff contends a trustee in bankruptcy qualifies as a "person appointed by the court." We are persuaded from the Legislature's use of the expression "the court" that the designation "person appointed by the court" was meant to refer to a receiver or other person appointed for the purpose of enforcing contribution by the superior court in conjunction with a proceeding for judicial dissolution and winding up. The expression "the court" is also found in Corporations Code sections 15032 ["the court shall decree a dissolution"] and 15037 ["winding up by the court"]. In those sections "the court" clearly refers to the superior court. Presumably, the reference is the same in section 15040, subdivision (e).

Even if we were to agree with plaintiff, however, that a trustee in bankruptcy is an "assignee for the benefit of creditors" or a "person appointed by the court" within contemplation of the statute, plaintiff would not come within its ambit. The designations "assignee for the benefit of creditors" and "person appointed by the court" plainly refer to an assignee for the benefit of creditors *of the partnership* or a person appointed by the court in connection with the affairs *of the partnership.* An assignee for the benefit of one partner or a person appointed by the court with respect to the affairs of one partner would be included in the designation "[a]ny partner *or his legal representative*" in subdivision (f). (Italics added.) As we have previously pointed out, plaintiff is not the trustee in bankruptcy of the joint venture but only of one joint venturer.

Plaintiff has stated no viable cause of action for contribution, and the judgment as to this cause of action will be affirmed.

### Conclusion and Disposition

Plaintiff, as trustee in bankruptcy of M.I.I., has stated no cause of action. The creditors of M.I.I. may, of course, seek redress either individually or collectively.

The judgment is affirmed.

Tamura, Acting P. J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 8, 1977. Bird, C. J., Mosk, J., and Manuel, J., were of the opinion that the petition should be granted.