In re Byron Allen FOLKS, Debtor.

CBS, INC., Appellant,

v.

Byron Allen FOLKS, Appellee.

BAP No. CC–95–1957–ZOH.
Bankruptcy No. LA 93–54736–KL.
Adversary No. 94–01732–KL.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 23, 1997.

Decided July 26, 1997.

Jonathan D. Avila, Los Angeles, CA, for CBS, Inc.

Randall D. Fowler, Monrovia, CA, for Byron Allen Folks.

Before: ZIVE,[1] OLLASON and HAGAN, Bankruptcy Judges.

## *OPINION*

ZIVE, Bankruptcy Judge.

### I. COURSE OF PROCEEDINGS

CBS Inc. ("CBS") filed a Complaint on March 28, 1994 Objecting to Discharge ("complaint") of the debtor Byron Allen Folks ("Folks"). The complaint was filed within the sixty day statute of limitations of Rule 4004(a).[2] Only the trustee, a creditor, or the United States Trustee can object to the discharge. § 727(c)(1).[3] CBS claims its creditor status based upon an alter ego claim against Folks for the debts of BYCA Television Distribution, Inc. ("BYCA"). BYCA is also a debtor in its own Chapter 7 case.

Folks contends CBS does not have a claim and is thus not a creditor with standing to assert a complaint objecting to discharge pursuant to § 727(c)(1) because the alter ego claim is property of the BYCA estate. As property of the estate, only the BYCA bankruptcy trustee has standing to assert the alter ego claim.

Folks also contends that CBS is barred from pursuing its complaint by the sixty day statute of limitations period of Rule 4004(a).

Folks filed a motion for summary judgment on the ground that CBS lacked standing to object to Folks' discharge. Prior to ruling on the summary judgment motion, the court gave CBS leave to obtain formal abandonment of the alter ego claim in the BYCA case. Following CBS' motion pursuant to § 554(b),[4] an order was entered May 24, 1995 directing the BYCA trustee to abandon *nunc pro tunc* to March 28, 1994, any alter ego claim that the trustee may have had against Folks. The court then granted Folks' motion for summary judgment.

CBS asks this Court to find that the bankruptcy court erred in granting Folks' summary judgment and to find that CBS has standing as a creditor to object to Folks' discharge pursuant to § 727(c)(1).

### II. FACTUAL BACKGROUND

On January 14, 1993, an involuntary chapter 7 was filed with respect to BYCA. CBS was among the petitioning creditors with a claim for $581,237.85 for "Television Production Services & Television Air–Time." BYCA executed a consent decree, consenting to the entry of an order for relief and an order for relief was entered May 26, 1993. CBS is listed as a creditor on BYCA's schedule F for $471, 396.85. BYCA was incorporated in California and has its principal place of business in Los Angeles, California.

---

1. Hon. Gregg W. Zive, Bankruptcy Judge for the District of Nevada, sitting by designation.

2. Rule 4004(a) provides:
 In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). In a chapter 11 reorganization case, such complaint shall be filed not later then the first date set for the hearing on confirmation ...
 Unless otherwise indicated, all references to "chapter" or to "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All references to "Rule" are to the Federal Rules of Bankruptcy

Procedure ("Fed. R. Bankr.P."), Rules 1001–9036.

3. § 727(c)(1) provides: "The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section."

4. § 554(b) provides: "On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

Byron Allen Folks filed a voluntary Chapter 7 petition December 21, 1993. On March 28, 1994, CBS filed its complaint alleging Folks committed wrongful acts specified in § 727(a)(2), (3), (4)(A), (D), (5), and (6).[5] Folks is an insider of BYCA as an officer, director and the person in control of BYCA. § 101(31)(B).[6] CBS alleges that Folks and his mother, Carolyn Folks, diverted corporate assets of BYCA for their personal benefit.

On May 13, 1994, Folks filed an answer raising the affirmative defense of CBS' lack of standing. Folks alleged that CBS was not a creditor of Folks within the meaning of § 101(10),[7] thus did not meet the standing requirements of § 727(c)(1).

Folks filed a Motion for Summary Judgment on August 22, 1994 contending that CBS lacked standing to assert its complaint because it is not a "creditor" of Folks pursuant to § 101(10) because the alter ego claim was property of the BYCA bankruptcy estate and the right to assert the claim was vested exclusively in the BYCA trustee.

CBS opposed the motion, contending that its alter ego claim was not property of the BYCA estate within the exclusive control of the trustee.

At the December 12, 1994 summary judgment hearing, the court issued a tentative ruling which was entered January 20, 1995.

The Court's tentative decision is to grant the motion for summary judgment. The question of whether CBS is a creditor with standing to file an action objecting to discharge is dependent upon: (1) whether the alter ego claim on which CBS bases its claim to be a creditor of Folks is property of the bankruptcy estate of BYCA Television Distribution, Inc. ("BYCA"), Case no. LA 93–11228 KL; and (2) if the claim is property of the BYCA estate, whether the claim was abandoned pursuant to 11

---

**5.** § 727 provides in part:

(a) The court shall grant the debtor a discharge, unless -

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case -

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage or a promise of money, property, or advantage, for acting or for bearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, and recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case -

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of a privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

**6.** § 101(31)(B) provides: "insider" includes— "(B) if the debtor is a corporation(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control;"

**7.** § 101(10) provides: "creditor" means—"(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(I) of this title; or (C) entity that has a community claim;"

U.S.C. § 554. Subject to the additional showing which the Court will permit CBS to make as provided below, it is the Court's tentative decision that the alter ego claim is property of the BYCA estate under 11 U.S.C. § 541(a) and that it was not abandoned pursuant to 11 U.S.C. § 554.... The court views the alter ego claim described by CBS in its responses to interrogatories as a general claim which, if proven, would establish a basis for holding Folks liable for all of the corporate debts of BYCA, and which is based upon acts which would constitute harm to BYCA and all of its creditors. Therefore, it is the court's tentative decision that the alter ego claim constitutes property of the BYCA estate, which can only be asserted by the BYCA trustee, and thus does not belong to CBS or any individual creditor of BYCA. Insofar as that claim is property of the BYCA estate, which was not abandoned, CBS cannot assert that claim and therefore can not employ that claim as the basis for its contention that it is a creditor of Folks.

Bankruptcy Court's Tentative Decision To Grant Motion For Summary Judgment, entered on January 20, 1995 ("Tentative Decision").

In its Tentative Decision, the bankruptcy court agreed with the decision of *In re Davey Roofing, Inc.,* 167 B.R. 604 (Bankr.C.D.Cal. 1994):

> that under California law a debtor corporation can maintain an alter ego claim to pierce its corporate veil if injury to the corporation can be alleged. An alter ego claim against the principal of a corporate debtor is property of the corporate debtor's bankruptcy estate (11 U.S.C. § 541(a)) insofar as the claim is a general one, with no particularized injury arising from it, which is based upon injury to the corporate debtor and all its creditors, rather than a personal claim belonging to any individual creditor. *Id.* at 608.

The court continued the summary judgment hearing to March 16, 1995, stating:

> in order to provide CBS with additional time within which to show, on a factual basis, that the alter ego claim upon which

it is relying is not property of the BYCA estate, or that it otherwise has authorization to pursue this adversary action through the BYCA estate. In connection with the latter issue, the court will also consider the question of whether, as a matter of law, any authorization obtained after expiration of the 60 day period specified in F.R.B.P. 4004(a) is effective.

Tentative Decision.

On January 12, 1995, CBS filed a Motion to Abandon Property of the Estate pursuant to § 554(b) seeking to compel the BYCA trustee to abandon, nunc pro tunc to March 28, 1994, any alter ego claim the trustee may have had or may possess with respect to Folks. March 28, 1994 is the date the § 727 complaint was filed in the Folks case. The motion stated the purpose of the abandonment was to permit CBS to pursue its complaint objecting to the discharge of Folks in his bankruptcy. The order abandoning the alter ego claim was entered May 24, 1995. The order states, "IT IS HEREBY ORDERED *nunc pro tunc* March 28, 1994, that the Trustee, David Seror, abandon to CBS any alter ego claim that the Trustee may possess with respect to Byron Allen Folks, former President of Debtor."

The summary judgment hearing was continued to June 22, 1995. By order entered August 10, 1995, the court granted Folks' motion for summary judgment, concluding "that there are [sic] no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law."

The court determined that abandonment did not confer standing on CBS despite the decision granting the abandonment *nunc pro tunc* March 28, 1994 and despite its January 20, 1995 Tentative Decision which states "[i]nsofar as that claim is property of the BYCA estate, which was not abandoned, CBS cannot assert that claim and therefore cannot employ that claim as the basis for its contention that it is a creditor of Folks."

## III. ISSUE

Did the court err by granting summary judgment because CBS did not have standing to assert the alter ego claim against Folks

notwithstanding the court's May 24, 1995 order in the BYCA case abandoning all alter ego claims against Folks to CBS nunc pro tunc March 28, 1994?

## IV. STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *In re Lucas Dallas*, 185 B.R. 801, 804 (9th Cir. BAP 1995); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). "The appellate court must determine, viewing the evidence in the light most favorable to the non-moving party, whether genuine issues of material fact exist and whether the ... court correctly applied the relevant substantive law." *Id.* at 1197.

## V. DISCUSSION

### A. Standing

CBS has standing to pursue its § 727 complaint only if it is a creditor of Folks. § 727(c)(1). The Bankruptcy Code defines a creditor as a party holding a claim against the debtor which arose at the time of or before the order for relief was entered. § 101(10). CBS claims its creditor status based upon an alter ego claim against Folks, alleging Folks is liable for BYCA's debts as BYCA's alter ego.

A claim is defined as a right to payment or the right to an equitable remedy for a breach of performance that gives rise to a right to payment. § 101(5).[8] The alter ego claim against Folks is a claim pursuant to § 101(5)(B), but the issue of whether CBS has standing to assert the claim must be determined.

■ Section 541 defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). The scope of § 541 is broadly defined and includes causes of action. *Unit-*

 *ed States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 n. 9 (1983); H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 5868, 6323. Bankruptcy law looks to state law to determine the property rights of the debtor. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Once the bankruptcy petition is filed property rights which belong to the debtor become assets of the estate. § 541(a)(1). Thus, a right of action which is property of the debtor becomes property of the estate.

■ A bankruptcy court has broad equitable powers and has the power to prevent injustice or unfairness in the administration of the bankruptcy estate. Fair administration of the estate requires claims which are assets of the bankruptcy estate to be pursued by the bankruptcy trustee. *Pepper v. Litton*, 308 U.S. 295, 307–08, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939). As property of the estate, the right to assert the claim is vested in the trustee. *Id.* at 306–07, 60 S.Ct. at 245–46; § 704(1).[9] This includes a right of action for breach of fiduciary duty that is enforceable by the corporation or by a shareholder's derivative action before the bankruptcy petition is filed. *Id.* at 307, 60 S.Ct. at 245–46.

■ The question of whether the alter ego claim against Folks is property of the BYCA estate or belongs to an individual creditor, for the purpose of determining standing to assert the claim, depends upon which state law permits an attempt to pierce the corporate veil. The court will look "to the law of the state in which legal or equitable title to the cause of action is asserted." *Koch Refining v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1344 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99

---

8. § 101(5) provides: "claim" means—"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]"

9. § 704(1) provides: "The trustee shall—(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest."

L.Ed.2d 237 (1988). BYCA was incorporated in California and has its principal place of business in Los Angeles, California. Thus, California law is controlling.

If Ninth Circuit and California law permit a debtor to assert an alter ego claim to pierce its own corporate veil, that claim becomes property of the estate; and if alter ego claims constitute property of the bankruptcy estate, then they cannot belong to any individual creditor, and thus may not be asserted by individual creditors.

*Davey Roofing*, 167 B.R. at 606.

■ In California, two types of alter ego claims are recognized. The first alleges " 'injury to the corporation giving rise to a right of action in it against defendants' and another where 'causes of action belong to each creditor individually.' " *Id.* at 608 (*quoting Stodd v. Goldberger*, 73 Cal.App.3d 827, 833, 141 Cal.Rptr. 67, 71 (1977)).

In *Stodd*, the court dismissed the trustee's complaint to pierce the corporate veil because the trustee failed to allege injury to the corporation. The *Stodd* court recognized that the corporate bankruptcy trustee has standing to assert an alter ego claim if injury to the corporation is alleged, otherwise each creditor individually has standing.

[The] plaintiff, as trustee in bankruptcy of a bankrupt corporation, cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants. In the absence of any such allegation, the asserted cause of action belongs to each creditor individually, and plaintiff is not the real party in interest. . . .

*Stodd*, 73 Cal.App.3d at 833, 141 Cal.Rptr. 67.

The *Stodd* court also recognized that the bankruptcy trustee "may not enforce rights of action which belong to the creditors individually because they are not rights in which the bankrupt claims an interest and are not assets of the estate in bankruptcy." *Id.* at 835, 141 Cal.Rptr. 67. The trustee's representation of the creditors is limited to "matters relating to marshaling, preserving or otherwise administering the assets of the estate in bankruptcy." *Id.* at 835, 141 Cal. Rptr. 67.

■ In California, only a creditor with a particularized injury has standing to assert an alter ego claim. In bankruptcy, if the alter ego claim has been determined to be property of the estate, "only the Debtor or Trustee has standing to assert the alter ego claim where injury to the corporation is alleged." *Davey Roofing*, 167 B.R. at 608. California law is consistent Ninth Circuit law. In *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988), the debtor financed its business through a "ponzi" scheme by selling "investment contracts" and notes guaranteeing a monthly return. California First Bank ("CFB") allegedly participated in the scheme. The investment program collapsed and an involuntary petition was filed. After obtaining court permission, the trustee solicited and accepted from investors the assignment of their claims against CFB for violation of federal securities laws.

CFB filed a motion to dismiss on the ground that the trustee lacked standing to sue a third party on behalf of creditors of the estate. Notwithstanding the assignment of claims, the court held the trustee lacked standing to proceed on an alter ego claim on behalf of the creditors of the bankruptcy estate.

The *Williams* court applied the principles expressed in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) where the United States Supreme Court held: "[A] reorganization trustee under Chapter X had no standing under the old Bankruptcy Act to assert, on behalf of the holders of the debtor's debentures, claims of misconduct against a third party. . . ." *Williams*, 859 F.2d at 666 (citing *Caplin*, 406 U.S. at 434, 92 S.Ct. at 1688). (In *Caplin*, the claims were not general claims, but specific and personal to the debenture holders).

The *Williams* court applied the factors identified in *Caplin*, in holding the trustee lacked standing. First, the trustee was attempting "to collect money not owed to the estate," which was not authorized by the Code. *Williams*, 859 F.2d at 667 (*quoting*

*Caplin,* 406 U.S. at 428, 92 S.Ct. at 1685). Second, the debtor corporation did not have a claim against CFB. The investors were the real parties in interest. *Id.* at 666–67. Thirdly, the court found the potential for inconsistent actions to be raised because not all investors assigned their claims to the trustee. *Id.* at 431–32, 92 S.Ct. at 1686–87. Notwithstanding the assignment of claims, the court denied standing to the trustee to assert a cause of action on behalf of the bankruptcy estate's creditors.

In 1978 when Congress enacted the Code, § 544, as originally proposed, would have permitted the trustee to assert causes of action on behalf of creditors, overruling *Caplin.* Congress deleted the provision before the statute was adopted. *Lucas Dallas,* 185 B.R. at 805 (*citing In re Ozark Restaurant Equip. Co. Inc,* 816 F.2d 1222, 1228 & nn. 9–10 (8th Cir.1987), *cert. denied sub nom. Jacoway v. Anderson,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987)). "The omission [from the Code] does not affect a trustee's right to bring a general action on behalf of all creditors rather than a personal one on behalf of only some." *Koch,* 831 F.2d at 1348 n. 11 (citing *Lumbard v. Maglia, Inc.,* 621 F.Supp. 1529, 1542 (S.D.N.Y.1985)).

The *Williams* court agreed with the holding in *Ozark* where the Eighth Circuit recognized Congress, express decision not to overrule *Caplin* as "extremely noteworthy." *Williams* at 667 (quoting *Ozark,* 816 F.2d at 1228 & n. 9). In *Ozark,* the trustee was denied standing because under Arkansas law the alter ego claim was considered personal to the creditors, could not be pursued by the corporation, and was not property of the estate.

The *Williams* court went on to state "[w]e also share that court's [the *Ozark* Court's] certitude that Congress' message is clear— no trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee[,] has power under ... the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors." *Williams,* 859 F.2d at 667 (quoting *Ozark,* 816 F.2d at 1228). (Second emphasis added) *Williams* and other cases are often cited for the proposition that a trustee lacks standing to assert an alter ego claim. These cases involve a trustee suing for claims personal to creditors, where the trustee was not the real party in interest. *See Ozark,* 816 F.2d at 1230.

*Davey Roofing,* in adopting the *Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130 (2d Cir.1993), analysis of *Williams,* declined to apply *Williams* to the facts of its case.

*Kalb* declined to follow *Williams* for the general proposition that the trustee lacks standing to assert an alter ego claim. The *Williams* trustee was denied standing to bring personal claims on behalf of creditors. *Kalb* reasoned that the holding in *Williams* denying standing to the trustee does not apply where the trustee is attempting to recover property of the estate, but only where the trustee attempts to recover property belonging to creditors personally. Additionally, *Williams* is not an alter ego case.

*Towe v. Martinson,* 195 B.R. 137 (D.Mont. 1996) also distinguished *Williams* on the basis that *Williams* involved a trustee who was pursuing claims that were personal to creditors. In *Towe,* the court found the trustee had standing to bring an alter ego claim because alter ego claim assets were assets of the bankruptcy estate.

 This Court finds the holding in *Williams* consistent with the principles enunciated in *Davey Roofing, Stodd, Towe* and *Koch. See also In re Lucas Dallas,* 185 B.R. 801, 804–05 (9th Cir. BAP 1995) (recognizing that bankruptcy trustees lack standing to assert actions against parties on behalf of creditors). The "trustee has the right to bring any action in which the debtor has an interest" because this is property of the estate, the trustee is acting to benefit the debtor's estate, and is ultimately benefitting the estate's creditors upon distribution. *Koch,* 831 F.2d at 1348. This promotes equitable distribution and accords with the Bankruptcy Code's ultimate goal of balancing the equities and interests of all affected parties in a bankruptcy case. *See Id.* at 1348 (*citing Pepper v. Litton,* 308 U.S. at 307, 60 S.Ct. at 245–46). However, trustees are prohibited from asserting personal claims on behalf of creditors

where the estate has no interest in the claims.

## B. General v. Particularized Injury

 "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause." *Koch*, 831 F.2d at 1348–49. A general claim exists "[i]f the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors." *Id.* at 1349. "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Kalb*, 8 F.3d at 132 (citing *St. Paul Fire and Marine Ins. Co. v. PepsiCo Inc.*, 884 F.2d 688, 700–01 (2d Cir.1989) (citations omitted)). If the alter ego claim constitutes property of the bankruptcy estate, it is a general claim and "cannot belong to any individual creditor." *Davey Roofing*, 167 B.R. at 606.

 To determine whether the action is personalized to an individual creditor or accrues generally to BYCA, the court must look to the alter ego claim and the injury for which relief is sought. CBS' alter ego claim alleges:

> [Folks] has treated Byca as his alter ego ...; (1) Folks appears to have been the sole shareholder, officer and director of Byca; (2) Folks failed to observe any of the corporate formalities with respect to Byca, including the failure to maintain stock ledgers, the failure to hold shareholder meetings, the failure to hold meetings of the board of directors, and the failure to maintain any minutes of either shareholder meetings or meetings of the board of directors; (3) Folks used the bank accounts and funds of Byca for his own personal expenditures and those of his mother, Carolyn Folks, which expenditures were not corporate expenses of Byca.

Plaintiff CBS Inc.'s Response To Defendant's First Set Of Interrogatories.

> The alter ego doctrine is used in certain situations to displace the basic principle of the law of corporations that a corporation and its shareholders are separate legal entities with limited liabilities. When certain state-governed requirements are met, the alter ego theory allows the legal distinction between a corporation and its shareholders, directors and officers to be disregarded or set aside in order to reach the assets of those individuals 'behind the corporation.' The general reason for allowing the corporation's 'veil to be pierced,' [is to recognize] ... that the corporation is a 'fictitious entity' which is simply a business conduit of another entity

*Koch*, 831 F.2d at 1344 (citing 18 Am.Jur.2d Corporations §§ 45, 46, 50, 51, 52 (1986); 3 Cowans § 16.7).

The bankruptcy court originally held that the alter ego claim is:

> [a] general claim, which, if proven, would establish a basis for holding Folks liable for all of the corporate debts of BYCA, and which is based upon acts which would constitute harm to BYCA and all of its creditors. Therefore, it is the court's tentative decision that the alter ego claim constitutes property of the BYCA estate, which can only be asserted by the BYCA trustee, and thus does not belong to CBS or any individual creditor of BYCA.

Tentative Decision.

 Viewing the evidence in the light most favorable to Folks, there are no genuine issues of material fact as to the alter ego claim being a general claim and property of the BYCA bankruptcy estate. The alter ego claim alleges that Folks failed to observe any corporate formalities with respect to BYCA and used bank accounts and funds of BYCA for personal and family expenditures. This is a general claim because all creditors are affected and no particularized injury to CBS exists.

The court correctly applied the relevant substantive law, California law and the standards articulated in *Davey Roofing* which include:

> An alter ego claim against the principal of a corporate debtor is property of the corporate debtor's bankruptcy estate (11 U.S.C. § 541(a)) insofar as the claim is a

general one, with no particularized injury arising from it, which is based upon injury to the corporate debtor and all its creditors, rather than a personal claim belonging to any individual creditor.

Tentative Decision.

The BYCA trustee has standing under § 544 to bring an alter ego action on behalf of BYCA and the estate's creditors because the claim is property of the estate. *See* §§ 704(1), 541(a). BYCA and all the creditors of the estate are the real parties in interest; and as property of the estate, no potential for inconsistent actions exists. *See Caplin*, 406 U.S. at 428–32, 92 S.Ct. at 1685–87.

C. Abandonment / Rule 4004(a)

■ The alter ego action is a general claim and property of the estate. Only the BYCA trustee has standing to assert the alter ego claim, unless the claim was timely abandoned. *See In re Koch*, 831 F.2d at 1346 & n. 9; *See also Stein v. United Artists Corp.*, 691 F.2d 885, 890–91 (9th Cir.1982).

■ The court entered an order on May 24, 1995 abandoning any alter ego claim the trustee may have possessed with respect to Folks to CBS, *nunc pro tunc* March 28, 1994. The effect of the abandonment is to revest the cause of action in the debtor as if the alter ego claim was never property of the estate. *Stein, supra*, at 891–91. An abandonment would relate back to the time of filing of the petition, retroactively making plaintiff [debtor] a proper party. *Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937)); *Bryson v. Bank of New York*, 584 F.Supp. 1306, 1316 (S.D.N.Y.1984). The plaintiff (debtor) in *Bryson* was not a proper plaintiff when the lawsuit was initiated, but the abandonment retroactively made plaintiff a proper party.

■ The abandonment *nunc pro tunc* also has the effect of retroactively making the debtor a proper party. When the court

grants a trustee's petition to abandon property in a bankrupt's estate, any title that was vested in the trustee is extinguished, and the title reverts to the bankrupt. *Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937); *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n. 1 (9th Cir.1964). "The bankrupt 'is treated as if having owned it continuously.'" *Mason v. Comm'r*, 646 F.2d 1309, 1310 (9th Cir.1980) (*quoting Wallace*, 338 F.2d at 394 n. 1). (Alteration in original).

■ The effect of the abandonment *nunc pro tunc* would retroactively make the debtor, BYCA, a proper plaintiff in the § 727 action, but a question remains. After the alter ego claim was abandoned, was CBS barred by the sixty day limitations period of Rule 4004(a) from pursuing the § 727 action?

■ CBS filed its motion to abandon the alter ego claim in the BYCA case on January 12, 1995. The order was entered May 24, 1995, more than a year after the sixty day Rule 4004(a) limitations period ran for filing the § 727 complaint.

Although CBS filed its complaint within the Rule 4004(a) limitations period, it lacked standing to do so pursuant to § 727(c)(1). If CBS is retroactively conferred standing to the time its § 727 complaint was filed, it is not time-barred. It must be determined whether the abandonment *nunc pro tunc* can retroactively confer CBS with standing at the time its complaint was filed.

■ Rule 4004(a) is strictly construed and requires a complaint objecting to discharge to be filed within 60 days of the first date set for the meeting of creditors. Rule 4004(a); *In re Anwiler*, 958 F.2d 925, 927 (9th Cir.1992), *cert. denied, Anwiler v. Patchett*, 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992).[10]

■ An extension of time in which to file a § 727 complaint will not be granted unless

---

10. Although Folks did not raise the untimeliness of CBS' complaint in his answer, motion for summary judgment or other responsive pleading as is required, this court in reviewing this appeal will consider this issue because it is purely a legal issue which is fully supported by the record.

*In re Santos*, 112 B.R. 1001, 1008 (9th Cir. BAP 1990); Fed.R.Civ.P. 8(c); *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985) (the court has discretion to consider on appeal arguments which have not been presented to the bankruptcy court).

a motion is made to extend the time before the expiration of the 60 day limitation. *In re Anwiler*, 958 F.2d at 927. CBS did not file a motion to extend the time to file its complaint.

CBS is requesting the panel to sanction an out-of-time filing. The court does not have the power to retroactively grant CBS standing. Not even a *nunc pro tunc* abandonment order can retroactively imbue CBS with standing. Judge Lax was correct in finding "[T]he mere abandonment did not transfer or imbue the recipient [CBS] with standing that formally belonged to the estate."

CBS should have attempted to gain standing to assert the alter ego claim by filing its motion to abandon prior to the expiration of the sixty day limitations period of Rule 4004(a). CBS could also have filed for an extension of time to file its complaint in order to gain additional time to obtain standing to assert the alter ego claim.

 The equitable power of the court to lift the statutory time bar within which a complaint objecting to discharge must be filed is limited. It may only be exercised if the court finds fraud or injustice has prevented the creditor from timely filing its complaint. *See In re Anwiler*, 958 F.2d at 928–29 (conflicting notices sent by two different bankruptcy courts setting forth a bar date for filing § 727 and § 523 complaints constituted sufficient compelling circumstances which justified the exercise of the bankruptcy courts' § 105 equitable powers to allow the untimely complaint); *In re Harten*, 78 B.R. 252, 253 (9th Cir. BAP 1987) ("While it is true that the bankruptcy court is a court of equity, *see Francis v. Riso (In re Riso)*, 57 B.R. 789 (D.N.H.1986), its power to lift the statutory bar for timeliness of claims is limited. The equity powers of the bankruptcy court are not all together shackled by the statute of limitations. However, 'such powers may be exercised to lift the statutory bar only in the extraordinary case where some element of fraud or injustice has prevented a creditor from filing his claim in a timely fashion.' *In re Riso*, 57 B.R. at 793 (quoting *In re Martin Edsel, Inc.*, 228 F.Supp. 538, 540–41 (D.N.H.1963))."). The *Harten* case involves the limitations of Rule 4007(c). The

time limits for filing complaints objecting to discharge and complaints to determine dischargeability pursuant to § 523(c) are identical. Thus, the cases which interpret the Rule 4007(c) limitations period are applicable to interpreting the Rule 4004(a) limitations period. *In re Santos*, 112 B.R. 1001, 1004–1005 & n. 2 (9th Cir. BAP 1990).

 "Equitable estoppel requires reasonable reliance on a defendant's words or conduct in forebearing suit within the applicable limitations period." *In re Santos*, 112 B.R. at 1007 (citing *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir.1978)). In this case, CBS did not rely upon the debtor's words or conduct in forbearing to file its complaint within the applicable limitations. Thus, CBS cannot invoke the doctrine of equitable estoppel.

 An allegation that a complaint is not timely filed is an affirmative defense that must be raised either in an answer or other responsive pleading. *In re Santos*, 112 B.R. at 1008; Fed.R.Civ.P. 8(c). Generally if this defense is not raised in the answer or other responsive pleading it is waived. *Id.* at 1008. Folks raised the Rule 4004(a) sixty day limitations period in his June 22, 1995 supplemental memorandum in support of his motion for summary judgment. Thus, CBS cannot invoke the equitable doctrine of waiver.

CBS is time-barred by the sixty day limitations period of Rule 4004(a) from bringing its § 727 complaint.

## VI. CONCLUSION

The court correctly applied California law in determining that the alter ego claim is a general claim, and property of the estate. No genuine issues of material fact exist as to this issue.

CBS is barred by the limitations period of Rule 4004(a) from bringing its § 727 complaint objecting to the discharge of Folks. The grant of summary judgment is affirmed.